IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIE FOODS INTERNATIONAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.  04 C 6610 |
| v. | ) |
| APOLLO GROUP & APOLLO USA, INC. | ) HONORABLE DAVID H. COAR |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Erie Foods International ("Plaintiff") is an Iowa corporation with its principal place of business in Erie, Illinois. Defendant Apollo USA, Inc. ("Apollo USA") is a Louisiana corporation with its principal place of business in Metairie, Louisiana. Defendant Apollo Group N.V. (incorrectly sued, it maintains, as "Apollo Group;" hereinafter "Apollo N.V.") is a Dutch company with its principal place of business in Nijmegen, Netherlands. It is also the parent company of Apollo USA. Before this Court is Defendant Apollo N.V.'s motion to dismiss Plaintiff's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons stated below, the motion is GRANTED.

**I.      FACTUAL BACKGROUND**

Plaintiff specializes in the research and manufacture of milk protein technology products. In processing some of these products, Plaintiff uses a milk protein known as casein. Casein is

the principal protein of cow's milk and the most commonly used milk protein the food industry. Plaintiff also uses acid casein, a granular milk protein, for a number of applications.

Defendants are involved in the global trade of diary ingredients, including casein and acid casein. Apollo USA, Inc. is the United States office of Apollo Group N.V. for this purpose. On each of the following dates, January 26, 2004, February 3, 2004, and April 2, 2004, Plaintiff entered into contracts with Apollo USA for the purchase and delivery of specified amounts of acid casein and unground casein. The three contracts specified delivery dates from March to September of 2004. Defendants failed to deliver the casein as required by the contracts. Moreover, Defendants indicated that they did not intend to make the August and September 2004 deliveries pursuant to the February and April contracts. Plaintiff, therefore, has sued Defendants for breach of contract. Apollo USA has waived any jurisdictional defenses by appearing and answering Plaintiff's complaint, but Apollo N.V., its parent corporation, contests this Court's personal jurisdiction.

## II. STANDARD OF REVIEW

When a defendant challenges a court's jurisdiction over his or her person, the plaintiff has the burden of showing that personal jurisdiction exists. See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997). The allegations in the plaintiff's complaint are taken as true unless controverted by the defendant's affidavits. See Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987). Any conflicts in the parties' affidavits are to be resolved in the plaintiff's favor. See id.

## III. ANALYSIS

"A federal district court exercising diversity jurisdiction has personal jurisdiction only if a court of the state in which it sits would have such jurisdiction." RAR, 107 F.3d at 1275. The Due Process Clause of the Fourteenth Amendment, however, limits a state's exercise of personal jurisdiction over a nonresident defendant.[1] See id. For personal jurisdiction to be proper, a defendant must have certain minimum contacts with the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985); Central States, Southeast and Southwest Areas Pension Fund v. Reimer, 230 F.3d 934, 942-43 (7th Cir. 2000). The central question is whether the defendant reasonably should have anticipated being hailed into court in the forum because it "purposefully availed itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws." Central States, 230 F.3d at 943. "Once minimum contacts have been shown to exist, a court must examine other factors, such as the forum's interest in adjudicating the dispute and the burden on the defendant, to determine whether the exercise of personal jurisdiction satisfies traditional notions of fair play and substantial justice." Id. To exercise *specific* personal jurisdiction,[2] the plaintiff's cause of action must arise out of or be

---

[1] This Court proceeds immediately to federal due process requirements because, as explained in RAR, a personal jurisdiction analysis in Illinois generally turns on those requirements:
> Three distinct obstacles to personal jurisdiction must generally be examined: 1) state statutory law, 2) state constitutional law, and 3) federal constitutional law . . . . Because the Illinois statute authorizes personal jurisdiction to the constitutional limits, the three inquiries mentioned above collapse into two constitutional inquiries--one state and one federal . . . . Unfortunately, however, the Illinois courts have given little guidance as to how state due process protection differs from federal protection in the context of personal jurisdiction . . . . [Therefore,] we must move on to address the federal constitutional issues directly.

107 F.3d at 1276-76 (citing 735 Ill. Comp. Stat. 5/2-209(c)).

[2] General jurisdiction arises when a state exercises personal jurisdiction over a defendant, not because the suit arises out of or is related to the defendant's contacts with the forum, but because the defendant has engaged in continuous and systematic activities in the forum state. Neither party appears to allege that Apollo N.V.'s activities in Illinois are continuous and systematic. Thus, if personal jurisdiction exists in this case, it must be specific. Specific jurisdiction arises when a state exercises personal jurisdiction over a defendant in a cause of

related to these minimum contacts.  See id.; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

Plaintiff seeks to establish jurisdiction over Apollo N.V., not because of any particular conduct of Apollo N.V. in Illinois, but because of Apollo USA's activities in Illinois.  As a general rule, however, the jurisdictional contacts of a wholly-owned subsidiary are not imputed to the parent corporation.  See Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 788 n.17 (7th Cir. 2003); Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984).  The rule is stated in Central States, 230 F.3d at 943:

> . . . we hold that constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary.

This rule also identifies the exception: Jurisdiction over a parent can be based on jurisdiction over a subsidiary if (1) the parent and subsidiary have not observed corporate formalities or (2) the parent exercises an unusually high degree of control over the subsidiary.  Accord Salon Group, Inc. v. Salberg, 156 F. Supp. 2d 872, 876 (N.D. Ill. 2001) ("Illinois courts recognize two methods by which a plaintiff can establish jurisdiction over a foreign parent based on the activities of its subsidiary.").  The Court will address each method in turn.

---

action that arises out of or is related to the defendant's contacts with the forum.  See generally RAR, 107 F.3d at 1277; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8, 415 n.9 (1984).

**A.     Have Apollo N.V. and Apollo USA observed corporate formalities?**

Under the first method, Plaintiff can establish jurisdiction over Apollo N.V. by providing evidence that would justify piercing the corporate veil of its subsidiary, Apollo USA. The law of the state of incorporation governs whether to pierce the corporate veil. See Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928, 933 (7th Cir. 1996).[3] In Louisiana, where Apollo USA is incorporated, factors to consider when determining whether to pierce the corporate veil include, but are not limited to: 1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings. See Riggins v. Dixie Shoring Co., Inc., 590 So. 2d 1164, 1168 (La. 1991). "[T]he totality of the circumstances is determinative." Id.

Plaintiff argues that Apollo N.V.'s ownership interest in Apollo USA; its mandatory approval of Apollo USA's business plans; its provision of capital to Apollo USA; its board members in common with Apollo USA; and the fact that it allegedly treats the assets of Apollo USA as its own demonstrate that Apollo USA is the alter ego of Apollo N.V. In light of the Louisiana standard, however, Plaintiff's evidence is insufficient.

First, there is no evidence that the corporations commingled funds: Defendant's affidavits establish that Apollo USA controlled its own finances, rented its own office space, and

---

[3] Although both parties have cited Illinois law on the alter ego doctrine, this Court applies the general choice of law rule for the doctrine. In any event, the requirements under Louisiana law for piercing the corporate veil are similar to those under Illinois law. See generally Van Dorn Co. v. Future Chemical and Oil Corp., 753 F.2d 565, 570 (7th Cir. 1985) (explaining the doctrine in Illinois).

maintained its own inventory.  Moreover, Apollo USA's profits did not flow back to Apollo N.V.; the subsidiary merely reported profits to its parent.  Second, Plaintiff does not allege that the two corporations failed to follow statutory formalities for incorporating and transacting corporate affairs.  Apollo N.V.'s annual report, which consolidates the sales and revenues of all subsidiaries pursuant to Dutch accounting rules, is not, by itself, adequate proof of failure to maintain formal separation, especially given the testimony that Apollo USA handled its own finances, which it recorded in separate books.  Third, Plaintiff presents no evidence of Apollo USA's undercapitalization.  Plaintiff does not allege that Apollo USA had insufficient assets or assets that were depleted for the benefit of Apollo N.V., or that Apollo USA was dependent upon Apollo N.V. for funds whenever necessary to meet its obligations.  See generally Van Dorn Co. v. Future Chemical and Oil Corp., 753 F.2d 565, 570-72 (7th Cir. 1985).  Plaintiff's only related allegation appears to be that Apollo Group N.V. "insinuated itself into the financial affairs of Apollo USA" by providing the subsidiary start-up capital and acting as a guarantor for credit that Apollo N.V.'s Dutch bank distributed to Apollo USA's American bank.  See Pl.'s Mem. in Opp'n at 9.  Fourth, Apollo USA and Apollo N.V. had separate bank accounts, accountants, balance sheets, and employee payrolls.  Fifth, Apollo USA annually held a directors' meeting in Louisiana, not in the Netherlands.

The instant case differs significantly from those cases in which Louisiana courts pierced the corporate veil.  See, e.g., Amoco Production Co. v. Texaco, Inc., 838 So. 2d 821, 835 (La. Ct. App. 2003) (noting that corporate parent invested thirty million dollars to buy gas and gas properties it put into subsidiary's name; had discretion over subsidiary's profits; and divested subsidiary of all its assets and funds, terminated its employees, and ceased all of its operations);

Hamilton v. AAI Ventures, L.L.C., 768 So. 2d 298, 303 (La. Ct. App. 2000) (noting that, in addition to undercapitalization, organizational charts for various affiliated companies illustrated overlap; individuals testified that they were unsure of co-workers' job titles or employers of record; employees of one organization were housed at offices of other organizations; and subsidiary had no employees).

The instant case is more similar to a Louisiana case in which the plaintiff's evidence fell "dismally short of piercing the corporate veil." Barnco International, Inc. v. Arkla, Inc., 684 So. 2d 986, 992 (La. Ct. App. 1996). The parent and subsidiary shared several directors and occasionally shared employees. Nevertheless, the court held that an alter ego finding was not warranted because the parent and subsidiary maintained precise records as cash moved between entities; the parent was not undercapitalized; the subsidiary's board of directors conducted its affairs by consensual written minutes; and the subsidiary conducted business on its own. Indeed, the subsidiary in Barnco, like Apollo USA, did not seek parental endorsement before entering into the contract at issue in the case.

Having failed to establish that Apollo N.V. and Apollo USA disregarded corporate formalities, Plaintiff must rely, if at all, on the second means of establishing personal jurisdiction.

**B.     Does Apollo N.V. exercise an unusually high degree of control over Apollo USA?**

Under the second method, Plaintiff can establish jurisdiction over Apollo N.V. by showing that Apollo N.V. substantially controls the activities of Apollo USA. This is the more

flexible method, since substantial control need not mean total control.  See LaSalle National Bank v. Vitro, Sociedad Anonima, 85 F. Supp. 2d 857, 864-65 (N.D. Ill. 2000); Liberty Mutual Fire Insurance Co. v. Reimer Express Enterprises, Ltd., 82 F. Supp. 2d 887, 890 (N.D. Ill.2000). But this method is also imprecise, since "[p]arents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent." IDS Life Insurance Co. v. SunAmerica Life Insurance Co., 136 F.3d 537, 540 (7th Cir. 1998).

With this in mind, several Illinois cases have established factors the Court may consider. See Akari Imeji Co. v. Qume Corp., 748 F. Supp. 588, 591-593 (N.D. Ill. 1990) (collecting cases).  As restated in Chung v. Tarom, S.A., 990 F. Supp. 581, 584 (N.D. Ill. 1998), these factors include whether: (1) the subsidiary was established and wholly owned by the parent; (2) the parent paid the salaries of the subsidiary's directors; (3) the parent guaranteed the subsidiary's lease; (4) the subsidiary's sole business was the sale of parts for the parent; (5) the parent listed the subsidiary's address in advertisements; (6) the subsidiary existed primarily to promote the sale and distribution of the parent's products; (7) the subsidiary was contractually required to apprise the parent of all aspects of its business; (8) the parent controlled the subsidiary's choice of dealers, designation of products and services, stock levels, and methods of ordering; (9) the parent dominated the subsidiary's board of directors; (10) the subsidiary conducted its board meetings in the domicile of the parent; and (11) the subsidiary was listed on a consolidated financial sheet along with the parent rather than publishing its own annual report.[4] In Maunder v. DeHavilland Aircraft of Canada, Ltd., 466 N.E.2d 217 (Ill. 1984), the Illinois

---

[4] The Court has omitted factors less relevant to the instant case—namely whether the subsidiary was obligated to repair and sell parts for the parent's products and whether the subsidiary was authorized to prosecute trademark infringement suits in the parent's name.

Supreme Court cited additional factors including whether: (12) in the papers and public statements of the parent corporation, the subsidiary is described as a department or division of the parent corporation; (13) the subsidiary's business or financial responsibility is referred to as the parent corporation's own; (14) the subsidiary's employees operate under the authority of the parent's officers; (15) the subsidiary purchases inventory from the parent. See id. at 219.

      The instant case involves several facts weighing in favor of finding that Apollo N.V. exerted substantial control over Apollo USA. Apollo USA's basic business, trade in dairy products, was the same as that of Apollo N.V. and other members of the Apollo Group. They shared at least two directors since the sole owner and CEO of Apollo N.V. and, at least at the time of incorporation, a minority owner of Apollo N.V. were also directors of Apollo USA. In addition, Apollo N.V.'s website lists Apollo USA as a member of the Apollo Group. Apollo N.V. also annually "approved," even if in name only, Apollo USA's business plans and listed Apollo USA and other subsidiaries on a consolidated financial sheet. Occasionally, Apollo N.V. acted as a guarantor for Apollo USA, and it paid for Apollo USA's debt upon dissolution from its receivables and collectibles. Finally, Apollo USA purchased its entire supply of casein and acid casein from a company, Kleinjan Milk Products ("Kleinjan"), in which Apollo N.V. had a forty percent ownership interest. Although Apollo N.V. denies that Kleinjan is a part of the Apollo Group, there is evidence that Apollo USA represented to Plaintiff that Kleinjan was a part of the Apollo Group.

      While all of the facts above seem, at first blush, indicative of substantial control, several are simply incidents of a parent-subsidiary relationship. This applies to Apollo N.V.'s sharing directors with its subsidiary, listing the subsidiary on its website, reviewing the subsidiary's

business plans, and including the subsidiary on a consolidated financial sheet. Indeed, courts considering similar challenges to personal jurisdiction have dismissed these facts as insufficient evidence of substantial control. See, e.g., Catalina Marketing International, Inc. v. Coolsavings.Com, Inc., 00 C 2447, 2003 WL 21542491, at *6 (N.D. Ill. July 3, 2003) ("[T]he shared board members and the effect the shared board members had on issues affecting [the subsidiary] are consistent with the normal relationship between a parent company and its subsidiary . . . ."); Salon Group, 156 F. Supp. 2d at 877 (holding that parent and subsidiary's sharing a director and subsidiary's officers regularly reporting to parent's managing director are "ties between a parent and subsidiary [that] are nothing more than the normal incidents of such a relationship"); LaSalle, 85 F. Supp. 2d at 861-63 (holding that website providing only information and not allowing for direct sales was insufficient to subject non-resident parent to court's jurisdiction); Gruca v. Alpha Therapeutic Corp., 19 F. Supp. 2d 862, 870 (N.D. Ill. 1998) (finding that subsidiary's obligation to present a budget to the parent "appears to be little more than oversight" given lack of evidence that parent helped to prepare or exercised a veto over the budget); id. (declining to find substantial control since, even though parent created a consolidated financial statement, subsidiary always kept its own financial records). Thus, when it would appear that seven facts weigh in favor of finding substantial control in the instant case, there are really only three such facts.

By contrast, numerous facts suggest that Apollo N.V. *did not* have the control over Apollo USA necessary to subject Apollo N.V. to jurisdiction in Illinois. Apollo USA had its own payroll and was responsible for its own rental space in Louisiana. Neither Apollo N.V. nor any other subsidiary was responsible for casein and acid casein worldwide; Apollo USA alone

was. Apollo USA was not required to apprise Apollo N.V. of all aspects of its business: Apollo N.V.'s CEO would travel to Louisiana each year for director's meetings, but was not involved in day-to-day activities of Apollo USA. Similarly, Apollo USA made all decisions regarding company policies and procedures, sales strategies, marketing, product supply, and product distribution, and there is no evidence of a contract between it and Apollo N.V. dictating otherwise. In fact, Apollo USA negotiated and entered into the contract at issue in this case without Apollo N.V.'s prior knowledge and without needing Apollo's N.V. approval. Furthermore, there is no evidence that Apollo USA's employees operated under the authority of Apollo N.V.: Apollo USA hired and paid its own employees, none of whom worked for or received benefits from Apollo N.V. Finally, Apollo USA did not go through Apollo N.V. to secure products from Kleinjan.

The Court finds that the facts suggesting substantial independence outweigh those suggesting that Apollo N.V. exerted inordinate control over Apollo USA. See Palen v. Daewoo Motor Co., Ltd., 832 N.E.2d 173, 186-87 (Ill. App. Ct. 2005) (weighing facts similarly and distinguishing several Illinois cases). Particularly persuasive is the evidence that Apollo N.V. had no role in the daily affairs of Apollo USA, from internal polices, employee affairs, and finances to product marketing, supply, and distribution. See also Gruca, 19 F. Supp. 2d at 870-71 (finding that limited evidence of control was insufficient when plaintiff "failed to provide evidence that the parent[] maintained control over the everyday operations of the subsidiar[y]" or evidence that, even though most of subsidiary's sales went to parent, subsidiary existed "for the sole purpose of selling products for [the parent]").

As here, evidence weighed in favor of both findings in FAIP North America, Inc. v. Sistema s.r.l., Slip Copy, 05 C 4002, 2005 WL 3436398 (N.D. Ill. Dec. 14, 2005). But the court in FAIP reached the opposite result for reasons that are distinguishable from the instant case. Like Apollo USA and Apollo N.V., the parent and the subsidiary in FAIP shared officers, the parent's website advertised the subsidiary as its North American branch, and the parent assured third parties that the subsidiary would perform certain agreements. See id. at *4. The parent in FAIP, however, exerted *even more* control over its subsidiary than did Apollo N.V.: The parent negotiated and set prices for transactions and products involving the subsidiary; the parent required the subsidiary to act as guarantor for the parent's warranty and product support agreements; the parent relied on the subsidiary to perform functions the parent normally would perform; and the parent's president routinely traveled to the United States for trade shows. Id. The court, therefore, decided that the parent corporation was susceptible to suit in Illinois. Accord Reid v. GSI Lumonics, No. 01 C 9027, 2002 WL 318288 (N.D. Ill. Feb. 25, 2002) (exercising personal jurisdiction when, among other things, the subsidiary's sales manager was clearly named as the parent's agent, the subsidiary's sales were publically announced as the parent's sales, and the parent directed the activities of the subsidiary's sales agents).

In sum, having established evidence of some control, but not substantial control, Plaintiff has failed to demonstrate that the contacts of Apollo USA in Illinois can be imputed to its parent. Since the requisite minimum contacts for Apollo N.V. do not exist, the Court need not determine whether the exercise of personal jurisdiction in this case would constitute fair play and substantial justice.

## IV. CONCLUSION

For the foregoing reasons, Defendant Apollo Group N.V.'s motion to dismiss Plaintiff's complaint for lack of personal jurisdiction is GRANTED.


Enter:


/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **4/10/06**